*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* DURAN/SMITH, Minors.

UNPUBLISHED
February 17, 2022

No. 356856; 356857
Wayne Circuit Court
Family Division
LC No. 2020-000394-NA

Before: M.J. KELLY, P.J., and STEPHENS and REDFORD, JJ.

PER CURIAM.

In these consolidated appeals,[1] respondent-father and respondent-mother appeal as of right the trial court's order terminating their parental rights under MCL 712A.19b(3)(b)(*i*) (parent's act caused abuse or injury); (b)(*ii*) (failure to prevent injury or abuse); (j) (reasonable likelihood of harm if returned to parent); and (k)(*iii*) (abuse included battering, torture, or other severe physical abuse and reasonable likelihood of harm if returned to parent). We affirm.

## I. BACKGROUND

At issue are three children: BMS, EMD, and ERD. BMS was three years old when the petition was filed, while EMD was 1½ years old, and ERD was approximately six months old. Respondent-mother is the mother of all three children, while EMD and ERD are the children of respondent-father.[2] Respondent-father and respondent-mother lived together with the three children, and respondent-father's teenage son also stayed with the family occasionally.

In March 2020, respondent-mother's sister contacted the police with concerns about BMS's wellbeing. Thereafter, BMS was taken to the hospital. A medical assessment showed BMS was severely malnourished and that he had bruising around his right eye, right ear, forehead, lips, nose, thighs, and the backs of his legs. Respondents indicated that BMS injured himself during tantrums and bruised easily. Respondent-mother initially admitted spanking BMS during

---

[1] *In re Duran/Smith Minors*, unpublished order of the Court of Appeals, entered April 20, 2021 (Docket Nos. 356856 and 356857).

[2] BMS's father's rights were also terminated, but are not at issue.

his tantrums, but later both respondents maintained they did not use physical discipline. A Child Protective Services (CPS) specialist, however, was told by a doctor that BMS's injuries were inconsistent with self-infliction. The doctor also opined that BMS likely had "re-feeding syndrome," meaning that he had been "starved for a period of time to the point that when he was in the hospital getting food, his body had to reset itself." Respondents stated that food would go right through BMS, though respondent-mother also told medical staff BMS was a picky eater. BMS gained weight in the hospital, and when placed with a foster family, and, although he sometimes had tantrums, did not suffer any injuries causing bruising outside of respondents' care. EMD and ERD were also evaluated. They appeared well cared for and had no medical issues. None of the children had been taken to the pediatrician in over a year, however.

The Michigan Department of Health and Human Services (DHHS) filed a petition seeking permanent custody of all three children. Notably, based on the evidence that BMS was malnourished and covered in bruises indicative of abuse, DHHS sought termination of respondent-father's parental rights to EMD and ERD and of respondent-mother's parental rights to all three children. During the course of the case, respondents were not provided services, but they completed a parenting class voluntarily and regularly visited the children. Respondents had appropriate housing, though there was evidence BMS did not have a bed of his own before the case was opened, instead sleeping in various locations around the house.

The trial court found clear and convincing evidence of statutory grounds to terminate both respondents' rights to each of their children under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (j), and (k)(*iii*), and found that termination of respondents' rights was in each child's best interests. On appeal, respondents challenge the existence of statutory grounds to terminate their rights, and argue termination of their rights was not in the children's best interests.

## II. STATUTORY GROUNDS

Respondents argue that the trial court clearly erred by finding statutory grounds to terminate their parental rights. We disagree.

## A. STANDARD OF REVIEW

"This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709, 713; 846 NW2d 61 (2014). "The trial court's factual findings are clearly erroneous if the evidence supports them, but we are definitely and firmly convinced that [the trial court] made a mistake." *Id.* at 709-710. In applying the clear error standard, regard must be given to the trial court's special opportunity to judge the credibility of the witnesses before it. *In re Schadler*, 315 Mich App 406, 408-409; 890 NW2d 676 (2016) (citation omitted). "We review de novo the interpretation and application of statutes and court rules." *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010).

## B. ANALYSIS

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). The trial court found there was clear and convincing evidence to establish statutory grounds for termination of

respondents' rights to all the children under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (j), and (k)(*iii*), which provide:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

> (b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

> (*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

> (*ii*) The parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home.

> * * *

> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

> * * *

> (k) The parent abused the child or a sibling of the child, the abuse included 1 or more of the following, and there is a reasonable likelihood that the child will be harmed if returned to the care of the parent:

> * * *

> (*iii*) Battering, torture, or other severe physical abuse.

### 1. ABUSE OR INJURY OF BMS

Respondents argue there is insufficient, or no "direct" evidence, that they injured BMS, and therefore, the trial court clearly erred when it terminated their parental rights. We disagree.

Respondents' claim that there was no direct evidence they injured BMS would undercut each statutory ground used to terminate their parental rights. This is so because each statutory ground requires evidence of past abuse or injury of a child or child's sibling, MCL 712A.19b(3)(b)(*i*) and (k)(*iii*), failure to prevent injury or abuse by a parent or other adult,[3] MCL

---

[3] MCL 712A.19b(3)(b)'s "subparagraph (*ii*) is intended to address the parent who, while not the abuser, failed to protect the child from the other parent or nonparent adult who is an abuser," and

712A.19b(3)(b)(*ii*), or worrying evidence about the parent's conduct or capacity, MCL 712A.19b(3)(j). Respondents' argument is undermined, however, by this Court's decision in *In re Ellis*, 294 Mich App 30; 817 NW2d 111 (2011).

In *Ellis*, this Court affirmed the termination of parental rights under the same four grounds at issue here. *In re Ellis*, 294 Mich App at 35-36. The child in *Ellis* had extensive injuries, the two respondents were his only caregivers, and the evidence was inconsistent with any explanation other than physical abuse. *Id*. at 31-32, 35. This Court held it was immaterial that it could not be proved which respondent actually committed the abuse. *Id*. at 33-36. Rather, "the trial court properly determined that at least one of them had perpetrated the abuse and at least one of them had failed to prevent it; consequently, it did not matter which did which." *Id.* at 35. This Court held "that termination of parental rights under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (j), and (k)(*iii*) is permissible even in the absence of definitive evidence regarding the identity of the perpetrator when the evidence does show that the respondent or respondents must have either caused or failed to prevent the child's injuries." *Id.* at 35-36.

This case is similar to *Ellis* because BMS suffered multiple injuries and medical problems in respondents' care over an extended period of time. The bruises covering BMS's body were in various stages of healing and his doctors opined that they were indicative of physical abuse, not self-inflicted wounds as respondents claimed. BMS was also severely malnourished, causing him to be "very skinny" with his skin "hanging down." As with the bruising, this condition developed over time and thus was readily observable not only to the person who failed to feed him, but the persons who lived with him. Like in *Ellis*, however, there is no direct evidence to show who or what injured BMS. Even so, the circumstantial evidence supports an inference that each respondent must have participated by injuring BMS or failing to prevent the injuries caused by the other respondent. Before he was hospitalized, BMS lived in an apartment with respondents, who were his sole caregivers. And like in *Ellis*, there was evidence in this case that BMS's injuries and malnourished state were inconsistent with respondents' explanations. Additionally, respondent-mother's explanation for BMS's malnourishment included that months before his hospitalization, he was sick for a week and that, in any event, whenever he ate, the food went "right through him." Instead of seeking medical attention for BMS's weeklong illness and apparent inability to properly digest food, respondent-mother took no action. Respondent-mother's explanations for BMS's malnourishment are also undermined by evidence that, after he was removed from her care, BMS gained weight. Accordingly, despite the lack of direct evidence identifying respondent-mother or respondent-father as the one who physically injured BMS, the record contains evidence that the trial court did not clearly err in its fact finding that at least one of them perpetrated the abuse and at least one of them failed to prevent it and therefore were subject to termination due to prior abuse or injury and "conduct or capacity" requirements of MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (j), and (k)(*iii*).[4] See *In re Ellis*, 294 Mich App at 35-36 (upholding termination generally under MCL

---

cannot be applied "merely to a negligent failure to respond to an accidental injury or naturally occurring medical condition not caused by an 'act' of a parent or other adult." *In re LaFrance Minors*, 306 Mich App 713, 725; 858 NW2d 143 (2014).

[4] We note that neither respondent challenges whether the treatment of BMS could be said to constitute "[b]attering, torture, or other severe physical abuse." MCL 712A.19b(3)(k)(*iii*).

-4-

712A.19b(3)(b)(*i*), (b)(*ii*), (j), and (k)(*iii*) when it was clear child was injured in the respondents' care).

## 2. REASONABLE LIKELIHOOD OF FUTURE HARM TO BMS

Respondent also argues that the trial court clearly erred by finding that if BMS was returned to her home, there was a reasonable likelihood he would suffer injury or abuse in the foreseeable future. We disagree.

Each statutory ground at issue also required clear and convincing evidence of a reasonable likelihood a child would be harmed if returned to a parent's care. MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (j), and (k)(*iii*). In *In re VanDalen*, 293 Mich App at 141, this Court employed similar reasoning to *Ellis* and explicitly addressed the future harm component. In *VanDalen*, two young children suffered multiple fractures and other serious injuries in their parents' care. *Id*. at 122-123. The parents could not explain the injuries, and the perpetrator of the injuries was never determined. *Id*. at 123, 140. However, there was expert evidence indicating the injuries resulted from physical abuse, and evidence that only one or both of the parents could have caused the injuries. *Id.* at 122-131. This Court upheld termination of the parents' parental rights under MCL 712A.19b(3)(g) and (j), holding "the extent and seriousness of the injuries to both children were consistent with prolonged abuse and clearly demonstrated a pattern of abuse in respondents' home indicating a substantial risk of future harm. This is especially so given the ongoing uncertainty about the circumstances of the children's intentionally inflicted injuries." *Id.* at 139-140.[5]

Similar to *VanDalen*, BMS's physical injuries clearly occurred over a prolonged period of time rather than in a single incident. This is demonstrated by BMS's malnourishment and the fact he had "different stages of bruising" when he was evaluated at the hospital. And like in *VanDalen*, despite evidence respondents caused BMS's injuries, the precise cause of his injuries was unclear. Respondents insisted BMS injured himself, and blamed his severe malnourishment on factors inconsistent with him gaining weight once he was removed from respondents' care. The ongoing uncertainty regarding the exact cause of BMS's injuries and malnourishment raises serious concerns that mistreatment could recur. Also concerning is respondents' failure to seek appropriate medical care for BMS despite his obvious health problems. These considerations support a reasonable inference that BMS was likely to be harmed in the future if returned to respondent-mother's care. Accordingly, the trial court did not clearly err by finding clear and convincing evidence that termination of respondent-mother's parental rights to BMS was warranted.

We acknowledge that respondents cooperated with CPS, and with placement of the children in a safety plan arrangement. Respondents' home was found to be appropriate, and there was some evidence suggesting respondent-mother could have safely parented BMS in the future. These considerations disfavor a finding of a reasonable likelihood of future harm. Even so, we are

---

[5] Like in *Ellis*, this Court also held that "termination of parental rights under MCL 712A.19b(3)(j) . . . is permissible even in the absence of determinative evidence regarding the identity of the perpetrator when the evidence shows that the respondents must have either caused the intentional injuries or failed to safeguard the children from injury." *In re VanDalen*, 293 Mich App at 141.

not "definitely and firmly convinced that [the trial court] made a mistake" in finding clear and convincing evidence that respondent-mother either caused or failed to prevent injuries to BMS, or that there is a reasonable likelihood BMS would be harmed if returned to her care. See *In re White*, 303 Mich App at 709-710. Accordingly, the trial court did not clearly err in finding clear and convincing evidence supporting termination of respondent-mother's parental rights to BMS under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (j), and (k)(*iii*). See *In re Ellis*, 294 Mich App at 35-36.

### 3. REASONABLE LIKELIHOOD OF FUTURE HARM TO EMD AND ERD

The next issue is whether the trial court clearly erred in finding clear and convincing evidence that there was a reasonable likelihood of future harm to EMD and ERD. We conclude that it did not.

The inference of future harm is strongest with BMS because respondents already harmed him, or failed to stop him from being harmed, while apparently keeping EMD and ERD healthy. Even so, respondents failed to take EMD and ERD to the doctor regularly, suggesting they could also be at risk of future harm, especially given respondents' treatment of BMS. Under the doctrine of anticipatory neglect, "[h]ow a parent treats one child is certainly probative of how that parent may treat other children." *In re LaFlure*, 48 Mich App 377, 392; 210 NW2d 482 (1973) (holding the trial court did not err by allowing "the state to present evidence of [the appellant-mother's] treatment of a second young son"); see also *Matter of Jackson*, 199 Mich App 22, 24, 26; 501 NW2d 182 (1993) (holding "the court properly weighed respondent's treatment of her oldest son in considering whether to terminate her parental rights" to her other children, when the respondent previously lost her rights to her oldest son because of abuse and neglect). At least at the best-interest stage, this Court has applied this doctrine in a case in which the prior evidence of the respondent's conduct concerned a child who was not the child of the respondent—like respondent-father and BMS in this case. See *In re Mota*, 334 Mich App 300, 323; 964 NW2d 881 (2020) (applying anticipatory neglect doctrine to case in which the respondent abused a child that the respondent "had been raising . . . for a number of years as if she were his daughter"). However, in doing so, this Court noted the doctrine was "not a perfect fit." *Id*.

This Court has cautioned against taking the anticipatory neglect doctrine too far, and applying it to children who were not abused or neglected, and who are not similarly situated to their siblings who were abused or neglected. See *In re LaFrance Minors*, 306 Mich App 713, 730-732; 858 NW2d 143 (2014); *In re Kellogg*, 331 Mich App 249, 259; 952 NW2d 544 (2020) (holding that the "probative value of [an anticipatory neglect] inference is decreased by differences between the children, such as age and medical conditions"). The anticipatory neglect inference is weakened in this case because EMD and ERD appeared perfectly healthy, and there was no evidence they were abused.

Nevertheless, we are not "definitely and firmly convinced that [the trial court] made a mistake" in finding clear and convincing evidence of a reasonable likelihood EMD and ERD would be harmed if returned to either respondent's care. See *In re White*, 303 Mich App at 709-710. BMS's injuries required serious and sustained mistreatment by at least one of respondents. Even if only one of respondents directly caused BMS's injuries, the other exhibited a disturbing and continued failure to intervene. EMD and ERD were approximately two and three years younger than BMS, respectively, but were approaching his age. This is in stark contrast to the

significant age differences seen in other cases in which this Court found the anticipatory neglect doctrine to be insufficient to warrant termination. See *LaFrance*, 306 Mich App at 726-730 (concluding anticipatory neglect doctrine inapplicable where neglected child and other children ages ranged from 5 to 12 years old); *Kellogg*, 331 Mich App at 260 (holding that the probative value of the anticipatory neglect doctrine was severally diminished by, among other things, a nine-year age difference between the children). EMD and ERD's young ages also made them more vulnerable than the older children in *LaFrance*. While there was evidence BMS had some behavioral issues, there was no evidence BMS had markedly different developmental needs than EMD and ERD. Respondents' failure to take either EMD or ERD to the doctor for over a year, and the fact that respondents' explanations for BMS's injuries were inconsistent with the medical evidence, further suggest an anticipatory neglect inference in this case is not clearly unwarranted.

In conclusion, the trial court did not clearly err in finding clear and convincing evidence that respondents caused or failed to prevent BMS's injuries, and that there was a reasonable likelihood of harm to EMD and ERD if returned to the care of either respondent. Accordingly, the trial court did not clearly err in finding that termination of respondents' parental rights to EMD and ERD was proper under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (j), and (k)(*iii*).[6] See *In re Ellis*, 294 Mich App at 35-36 (upholding termination generally under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (j), and (k)(*iii*) when it was clear child was injured in the respondents' care).

## III. BEST INTERESTS

Respondents argue termination of their parental rights was not in the children's best interest. We disagree.

## A. STANDARD OF REVIEW

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the [children's] best interests before it can terminate parental rights" *In re Olive/Metts Minors*, 297 Mich App 35, 40-41; 823 NW2d 144 (2012). "[W]hether termination of parental rights is in the best interests of the [children] must be proven by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The trial court's ruling

---

[6] We note, but do not evaluate, DHHS's concession that MCL 712A.19b(3)(b)(*i*) and (b)(*ii*) do not apply to respondent-father because he is not BMS's "parent." Respondent-father made no such argument. Whether respondent-father injured BMS himself, or failed to prevent respondent-mother from doing so, the trial court did not clearly err in finding clear and convincing evidence that respondent-father's "conduct or capacity" created a reasonable likelihood of harm to EMD and ERD if they were returned to respondent-father. MCL 712A.19b(3)(j). See *In re Ellis*, 294 Mich App at 35-36; see also *In re VanDalen*, 293 Mich App at 141 (upholding termination under MCL 712A.19b(3)(j) and (g) "even in the absence of determinative evidence regarding the identity of the perpetrator when the evidence shows that the respondents must have either caused the intentional injuries or failed to safeguard the children from injury."). Because MCL 712A.19b(3)(j) is satisfied, we need not address the concession made by DHHS. *In re Martin*, 316 Mich App 73, 90; 896 NW2d 452 (2016) ("[O]nly a single statutory ground need be established in support of termination . . . .").

-7-

regarding best interests is reviewed for clear error. *In re Schadler*, 315 Mich App at 408. To reiterate, "[t]he trial court's factual findings are clearly erroneous if the evidence supports them, but we are definitely and firmly convinced that [the trial court] made a mistake." *In re White*, 303 Mich App at 709-710.

## B. ANALYSIS

The focus of the best-interest determination is on the child, not the parent. *In re Schadler*, 315 Mich App at 411. Factors to be considered for purposes of the best-interest analysis include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App at 41-42. "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714. Additionally, the trial court may consider psychological evaluations, the child's age, and a parent's history. *In re Jones*, 286 Mich App 126, 131; 777 NW2d 728 (2009). "The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App at 713. When the children are not similarly situated, the trial court must "consider each child individually and assess the best interests of the children separately." *In re TK*, 306 Mich App 698, 711; 859 NW2d 208 (2014) (citation omitted).

### 1. BMS

Consistent with *In re TK*, the trial court considered BMS's best interests separate from EMD and ERD. *In re TK*, 306 Mich App at 711. BMS was physically injured while in respondent-mother's care and malnourished to the point his skin was hanging off his body. Instead of seeking medical attention for BMS, respondent-mother did nothing. Additionally, BMS had a history of behavioral issues manifesting in temper tantrums that led him to sometimes hit himself. For over a year before his removal, respondent-mother sought no care for those behavioral issues either. Instead, according to the medical records, she spanked BMS and, according to the evidence presented at trial, she was waiting for the behavioral issues to stop on their own. The trial court noted that, even if respondent-mother's explanations were true, she still failed to seek care for a child who clearly needed it. That finding was not clearly erroneous. Moreover, given that caseworkers had to push respondent-mother to attend BMS's medical appointments, the record also supports a finding that respondent-mother would neglect BMS's medical needs in the future.

We acknowledge, as did the trial court, that respondent-mother had housing and income, attended parenting classes and visited BMS. The court in its ruling noted that despite these positives that respondent-mother focused heavily on the child's unresolved behavioral issues, had a tenuous bond with BMS and even after the court took jurisdiction had to be prodded to attend medical appointments. The trial court was, however, entitled to give "strong weight to the children's need for safety and stability." See *In re White*, 303 Mich App at 714. There was evidence BMS was doing well in his foster care placement and was very close to his foster mother. He continued to gain weight in foster care, and suffered no further significant injuries.

We do not find error in the court's analysis of BMS's best interests.

## 2. EMD AND ERD

With regard to EMD and ERD, the trial court emphasized the doctrine of anticipatory neglect, but also stressed that none of the children were taken to the doctor for over a year. The failure to provide well child care is a basis for actual neglect, rather than anticipatory neglect of both young children, albeit not at the level of harm accrued by BMS. The trial court noted respondent-father failed to protect BMS, and respondent-mother's "parenting ability has proven to be unfit for the children." As in our discussion of statutory grounds for termination, we conclude that, though the anticipatory neglect inference is weakened in this case by several factors, it was not clearly erroneous to apply the inference. The serious and sustained nature of respondents' mistreatment of, and failure to protect, BMS, along with the failure to take responsibility, raises an inference the behavior leading to BMS's injuries will continue.

There was evidence EMD and ERD were doing well in their separate foster care placements, though they also had good bonds with respondents. Given that the trial court is entitled to give "strong weight to the children's need for safety and stability," *In re White*, 303 Mich App at 714, and the regard owed to the trial court's credibility determinations, *In re Schadler*, 315 Mich App at 408-409, we are not "definitely and firmly convinced that [the trial court] made a mistake," and thus we conclude that there was no clear error with respect to the trial court's best-interest determination related to EMD and ERD. See *In re White*, 303 Mich App at 709-710.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ James Robert Redford

-9-